UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

MELISSA A. COVEN,

           Plaintiff,

v.                                       Case No.  5:08-cv-389-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

           Defendant.

_____

## ORDER

Plaintiff appeals from a final decision of the Commissioner of Social Security

("the Commissioner") denying her application for supplemental security income. (Doc.

1.) The Commissioner has answered (Doc. 11), and both parties have filed briefs

outlining their respective positions. (Docs. 16 & 17.) For the reasons discussed below,

the Commissioner's decision is due to be **AFFIRMED**.

## I.  PROCEDURAL HISTORY

On December 13, 2004, Plaintiff filed an application for supplemental security

income, alleging a disability onset date of March 1, 2002. (R. 76, 97.) Plaintiff's

application was denied initially and upon reconsideration. (R. 42, 55-57, 59-61.)

Thereafter, Plaintiff timely pursued her administrative remedies available before the

Commissioner and requested a hearing before an Administrative Law Judge ("ALJ"). (R.

45.) The ALJ commenced an administrative hearing on October 13, 2006, but decided

to reschedule it upon learning that Plaintiff had a medical appointment on the same day.

(R. 355-58.) The ALJ thereafter conducted the administrative hearing on January 9,

2007. (R. 321-54.) The ALJ issued a decision unfavorable to Plaintiff on March 7, 2007. (R. 15-25.) Plaintiff's request for review of the hearing decision by the Social Security Administration's Office of Hearings and Appeals was denied. (R. 4-6.) Plaintiff then appealed to this Court. (Doc. 1.)

## II. <u>STANDARD OF REVIEW</u>

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla in that the evidence must do more than merely "create a suspicion of the existence of [a] fact," and must include "such relevant evidence as a reasonable person would accept as adequate to support the conclusion."[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient

---

[1] *See* 42 U.S.C. § 405(g).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Richardson v. Perales, 402 U.S. 389, 401(1971); Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982)); *accord* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding court must scrutinize entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding court must also consider evidence detracting from evidence on which Commissioner relied).

reasoning to determine that the Commissioner properly applied the law.[5]   The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, she is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in Title 20, Part 404, Subpart P, Appendix 1 of the Code of Federal Regulations, she is disabled.[11] Fourth, if a claimant's impairments do

---

[5] Keeton v. Dep't Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. See Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] Id. § 404.1520(c).

[11] Id. § 404.1520(d).

not prevent her from doing past relevant work, she is not disabled.[12] Fifth, if a claimant's impairments (considering her residual functional capacity ("RFC"), age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[17] In a situation where both exertional and non-exertional impairments are

---

[12] 20 C.F.R. § 404.1520(e).

[13] Id. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); see also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2.
In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.
Id. (internal citations omitted).

[16] Walker, 826 F.2d at 1002. Once the burden shifts to the Commissioner to show that the claimant can perform other work, the grids may come into play. Id.

[17] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Walker v. Bowen, 826 F.2d 996,
(continued...)

found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the grids as a framework to evaluate vocational factors so long as the ALJ introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[21]

## III. SUMMARY OF THE RECORD EVIDENCE

Plaintiff was thirty nine (39) years old on the date the application was filed and was forty-one years old at the time of the ALJ's decision on March 7, 2002. (R. 24, 76.) She has a ninth grade education, and has previous work experience as a front desk clerk/night auditor, sandwich maker, and cashier. (R. 42, 88, 102, 330.) Plaintiff contends that she has been unable to work since March 1, 2002 due to asthma, high blood pressure, depression, and medical problems associated with her back, bladder, cervix, and heart. (R. 43, 96.)

---

[17](...continued)
1003 (11th Cir. 1987) ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

[20] See id.

[21] See Doughty v. Apfel, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

In the ALJ's review of the record, including Plaintiff's testimony and medical records from several health care providers, the ALJ determined that Plaintiff suffers from low back pain, hypertension, asthma, and mild aortic insufficiency. (R. 18.) While these impairments are severe, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Title 20, Part 404, Subpart P, Appendix 1 of the Code of Federal Regulations. Specifically, the ALJ found that the objective medical evidence fails to establish that Plaintiff met the criteria of Sections 1.00 et seq. (Musculoskeletal System), 3.00 et seq. (Respiratory System), 4.00 et seq. (Cardiovascular System), and/or 12.06 (Anxiety-related Disorders) of the Listings of Impairments. (R. 19-20.)

The ALJ then found that Plaintiff retained the RFC to perform the exertional demands of light work. (R. 21.) The ALJ limited Plaintiff to lifting and/or carrying twenty pounds occasionally and ten pounds frequently; standing and/or walking for about six hours in an eight hour workday; sitting for about six hours in an eight hour workday; pushing / pulling with no limitations within the aforementioned weight restrictions; and occasional balancing, stooping, and/or crouching. He further limited Plaintiff to avoid concentrated exposure to fumes, odors, gases, dangerous machinery, and unprotected heights. (R. 21.) As for mental impairments, the ALJ found that Plaintiff did not suffer from a severe mental impairment and that she has only mild restriction of activities of daily living; mild difficulties in maintaining concentration, attention, and pace; and no episodes of decompensation. (R. 21). The ALJ found that Plaintiff retained the ability to perform simple repetitive tasks and work in a position with a low stress level. After

finding that Plaintiff could perform her past relevant work as a front desk clerk / night auditor at a motel chain as that position was described by the Plaintiff, the ALJ concluded that Plaintiff was not disabled. Despite his conclusion that Plaintiff was capable of performing past relevant work, the ALJ proceeded to step five of the sequential analysis and concluded that using Rule 202.19 of the Medical-Vocational Guidelines (the "grids")[22] as a "framework," Plaintiff was also "not disabled" because the non-exertional limitations included in her RFC do not significantly erode the occupational base of unskilled light work, and therefore, she is capable of performing the full range of unskilled light work. (R. 24-25.)

On appeal, Plaintiff challenges the ALJ's assessment of her mental health impairment. A review of the medical evidence demonstrates that, other than an isolated instance of one mental health counseling session following the accidental death of her two and a half year old daughter in 1992, Plaintiff never sought nor received any treatment for mental health problems. Although her primary care physician's treatment notes reflect that Plaintiff was diagnosed with anxiety and prescribed with anti-anxiety medication, Plaintiff was never referred for any psychiatric care and her physician made no further notations regarding the condition. (R. 137-40, 144, 149.)

Dr. Edward Demmi performed a consultative examination of Plaintiff in February 2005 at the request of the Social Security Administration. Dr. Demmi noted that Plaintiff had no mental health complaints and his examination of Plaintiff revealed normal affect and mood. (R. 238-43.)

---

[22] 20 C.F.R. § 404, subpt. P, app. 2.

Linda Bojarski, Psy.D., a licensed clinical psychologist, conducted a consultative psychological examination in June 2005. (R. 266-69.) Plaintiff complained of having episodes in which she experiences anxiety symptoms such as a racing heart, sweaty palms, feeling faint, and nausea, for the past ten years. According to Plaintiff, she experiences these symptoms whenever she is in crowded public places. She obtains relief from these symptoms by taking anti-anxiety medication, getting out of the crowd, and/or deep breathing. Although Plaintiff informed Dr. Bojarski that she does not like to leave her house, Dr. Bojarski noted that Plaintiff is able to go grocery shopping on a regular basis and is "able to perform all ADLs independently." (R. 267-68.) Plaintiff advised that she usually gets along with people very well, and has visitors to her home once a month. According to Dr. Bojarski, Plaintiff was engaging in some leisure activities and was able to do household chores.

Upon examination, Dr. Bojarski observed that Plaintiff's affect was modulated and her speech was clear and logical. Dr. Bojarski noted there was no evidence of a thought disorder. Plaintiff was alert and oriented to time, place, and person, and denied experiencing hallucinations. Plaintiff was capable of performing a series of routine cognitive tests, and as such, Dr. Bojarski concluded that Plaintiff demonstrated no deficits in her memory or concentration. Plaintiff described her usual mood as happy and a "fair" energy level, but reported having insomnia and strong feelings of guilt. Plaintiff admitted having current suicidal ideation but denied ever attempting suicide and also denied having any plan or intent. (R. 268.) Dr. Bojarski's consultative report reflects that "[Plaintiff] has never received inpatient mental health treatment, and her only

outpatient treatment was one session after her daughter's death." (R. 268.) Dr.

Bojarski's impression was panic disorder with agoraphobia and nicotine dependence.

(R. 268.)

In July 2005, Walter P. Shepherd, Ph.D, a state agency psychologist, reviewed

Plaintiff's medical records and opined that due to Plaintiff's panic disorder with

agoraphobia, she experienced mild restriction of activities of daily living; mild difficulties

in maintaining social functioning; mild difficulties in maintaining concentration,

persistence and pace; and no episodes of decompensation. (R. 270-83.) Noting

Plaintiff's ten year history of anxiety and the report from Dr. Bojarski's consultative

examination, Dr. Shepherd concluded that Plaintiff did not have a severe mental

impairment. Specifically, he concluded that Plaintiff is "able to get out of house despite

[diagnosis] of panic dis[order] w[ith] agoraphobia; some fears seem related to fear of

falling, [and/or] fainting bec[ause] of heart problem." (R. 282.)

In September 2005, Lauriann Sandrik, a state agency psychologist, reviewed

Plaintiff's medical records and found that due to Plaintiff's mental impairment, she

experienced mild restriction of activities of daily living; mild difficulties in maintaining

social functioning; mild difficulties in maintaining concentration, persistence and pace;

and no episodes of decompensation. (R. 284-98.) In rendering her opinion, Dr. Sandrik

noted Plaintiff's statement to a Social Security Administration case worker on

September 1, 2005 that she was not disabled due to mental problems. Dr. Sandrik also

reviewed medical evidence including Dr. Bojarski's consultative examination report,

treatment notes from Plaintiff's treating physician, and Dr. Demmi's findings during his

February 2005 consultative examination. Dr. Sandrik concluded that Plaintiff's limitations were related to her physical impairments and that her mental impairment was "not severe at this time." (R. 297.)

## IV. DISCUSSION

Plaintiff contends that the ALJ erred by failing to elicit a knowing and intelligent waiver from Plaintiff regarding her right to counsel. Plaintiff also argues that the ALJ committed reversible error by failing to develop the record fully and fairly. Finally, Plaintiff argues that, as a result of the ALJ's failure to fulfill his obligation to develop the record, his determination at step two of the sequential analysis that Plaintiff did not suffer from a "severe" mental impairment was improperly based on an incomplete administrative record.

### A.    *Plaintiff Effectively Waived Her Right to Counsel.*

Because a social security claimant's right to counsel is a statutory—as opposed to constitutional—right, it can be waived.[23] For it to be effective, waiver must be knowing and intelligent.[24] Plaintiff contends her "waiver" was not knowing and voluntary because the ALJ did not inform her of the availability of affordable representation and he did not adequately explain "that an attorney would do more than simply talk about 'what is wrong with [her].'" Plaintiff's argument, however, assumes that the ALJ has an affirmative duty to solicit a knowing and intelligent waiver. The duty only requires the

---

[23] Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995) (citing 42 U.S.C. § 406; Smith v. Schweiker, 677 F. 2d 826, 828 (11th Cir. 1982)).

[24] Smith, 677 F.2d at 828.

ALJ to provide a claimant with sufficient notice of her statutory right to have counsel represent her at her hearing before the ALJ.[25]

Plaintiff was notified of her right to representation on more than one occasion prior to the hearing via written correspondence from the Commissioner. (R. 50-54, 56, 60.) In this correspondence, the Commissioner repeatedly advised Plaintiff that she had a right to counsel, that such representation could be obtained free of charge, and that "the representative must first obtain approval from [the Commissioner] for any fee charged." (R. 50-54.) In addition, the Commissioner provided Plaintiff with a list of organizations who would be able assist Plaintiff in obtaining representation. (R. 52-54.) Plaintiff acknowledged receipt of this correspondence on three different occasions. (R. 39, 46-47.)

Moreover, in addition to the content of the Commissioner's written correspondence, Plaintiff also affirmatively expressed her desire to proceed without legal representation. Plaintiff first appeared before the ALJ in October 2006 but the ALJ discontinued the hearing upon learning that Plaintiff had a medical procedure[26] scheduled for the same day. (R. 357.) At that time, the ALJ observed that Plaintiff had appeared without legal representation and, prior to concluding the hearing, he noted that rescheduling the hearing would "allow [Plaintiff] sufficient time to obtain representation. . . . [Plaintiff] said she would take this into consideration." (R. 357.)

_____

[25] Cowart v. Schweiker, 662 F.2d 731, 733-34 (11th Cir. 1981); Smith v. Schweiker, 677 F. 2d 826, 828-29 (11th Cir. 1982).

[26] Plaintiff was scheduled to undergo a sonogram of her heart. (R. 357.)

In January 2007, Plaintiff appeared for her rescheduled hearing before the ALJ once again without legal representation. At the beginning of the hearing, Plaintiff acknowledged that she was aware of her right to counsel. (R. 324.) After the ALJ reminded her of that right during the hearing, Plaintiff thereafter advised that she wished to proceed without representation. (R. 325.) She also signed a waiver which states:

> I received and read the hearing acknowledgment letter and its enclosures and I understand the information contained therein. I have also been advised, and I understand, that I have the right to be represented in this proceeding by an attorney or by any other qualified person of my choice. I have considered the matter and have decided to waive my right to such representation, and wish to proceed without a representative. This is a signed acknowledgment of the voluntary decision on my part.

(R. 44.) In view of these facts, there is no question that the Plaintiff effectively waived her right to representation.

**B.** ***Plaintiff Was Not Prejudiced by Her Lack of Representation at Her Hearing Before the ALJ.***

In addition to having to prove that a waiver was not knowing and intelligent, in order to obtain a remand, a claimant must also demonstrate prejudice resulting from her lack of representation at the hearing.[27] Plaintiff has failed to do so.

In an attempt to show that she was prejudiced by her failure to obtain counsel, Plaintiff points to evidence that was not included in the administrative record before the ALJ concerning an October 2006 incident in which Plaintiff alleges she was "Baker

---

[27] Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997).

Acted"[28] [the "Baker Act incident"]. In particular, Plaintiff argues that had she been represented by counsel, the records associated with Plaintiff's Baker Act incident would have been obtained and presented to the ALJ for consideration.

Plaintiff suggests she was prejudiced by the ALJ's failure to consider "the medical records regarding [Plaintiff's] Baker Act" incident because without the records the ALJ improperly concluded that Plaintiff did not suffer from a "severe" mental health impairment at step two of the sequential evaluation.

### 1. The ALJ Fulfilled His Duty to Develop the Record.

Regardless of whether a claimant is represented by counsel, the ALJ has a basic obligation to fully and fairly develop the record[29] because a hearing before the ALJ is intended to be "inquisitorial rather than adversarial" in nature.[30] The duty is triggered, for example, when there is an ambiguity in the record or when the record is inadequate to allow for proper evaluation of the evidence.[31] "There is no bright line test for determining when the administrative law judge has . . . failed to fully develop the record."[32] The determination depends upon the facts and circumstances of a particular case.

---

[28] The "Baker Act" is Florida legislation designed to provide public officials with the authority to subject individuals to "emergency and temporary detention" where their behavior is deemed to present an imminent threat of danger to the individual or others. FLA. STAT. §§ 394.451-.4789.

[29] Kelley v. Heckler, 761 F.2d 1538, 1540 (11th Cir. 1985); Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981).

[30] Sims v. Apfel, 530 U.S. 103 (2000).

[31] See 20 C.F.R. §§ 404.1512(e), 404.1519a.

[32] Lashley v. Sec'y of Health & Hum. Servs., 708 F.2d 1048, 1052 (6th Cir. 1983).

Plaintiff complains that, by failing to obtain the records associated with the October 2006 Baker Act incident, the ALJ did not satisfy his duty to develop the record. In response to Plaintiff's contention that the ALJ improperly based his disability determination upon an inadequate record, the Commissioner argues that the burden is on the Plaintiff—and not the Commissioner—to provide evidence of a disability. While this statement is accurate as a general matter, nonetheless, a claimant's failure to fully sustain her burden of proof does not relieve the Commissioner of his responsibility to conduct a reasonable inquiry into all the matters at issue.[33]

The ALJ satisfied this responsibility, however, by making reasonable inquiry into the Baker Act incident by eliciting testimony from the Plaintiff during the hearing. Over the course of nearly an hour of questioning, the ALJ thoroughly covered various matters related to Plaintiff's application for social security benefits.[34] For example, the ALJ went beyond merely asking Plaintiff cursory questions regarding background information, e.g., her living arrangements, education, employment history, hobbies, activities of daily living, and a general discussion of her alleged medical problems. The ALJ specifically asked Plaintiff to identify the medical problems she alleged were preventing her from being able to work and to discuss the treatment she was receiving from various health care providers. In particular, the ALJ inquired about Plaintiff's allegations of having

---

[33] *See, e.g.*, Sierka v. Comm'r of Soc. Sec., No. 6:08-cv-1073-Orl-28GJK, 2009 WL 2160523, at *11 (M.D. Fla. July 17, 2009) (citing Figueroa v. Sec'y of Health, Educ. & Welfare, 585 F.2d 551, 554 n.2 (1st Cir. 1978)).

[34] The hearing began at 10:35 a.m. and concluded at 11:12 a.m. on January 9, 2007. (R. 323, 354.)

seizures, fainting episodes, and problems with her heart,[35] lungs, neck, shoulders, back, and legs. As part of that discussion, the ALJ asked Plaintiff to describe her pain. He questioned her about the location, frequency, and severity of her pain. The ALJ asked Plaintiff to identify the medications she was taking and how they impacted her ability to complete her activities of daily living. He also inquired into the extent of her abilities to: raise her arms above her head, write, pick up small objects with her hands, bend at the waist, drive an automobile, lift, walk, stand, and sit.

With respect to Plaintiff's mental health complaints, over the course of the entire hearing, the only specific mental health problem Plaintiff identified was anxiety. The ALJ specifically asked Plaintiff whether she suffered from depression and she replied, "No. I wouldn't call it depression." (R. 338.) While discussing Plaintiff's mental health problems, Plaintiff advised that she had been "Baker Acted" in October 2006 following an argument with her mother. (R. 338-40.) Plaintiff testified that "[her] mother called the police and said that [she] had threatened to commit suicide." (R. 339.) Upon learning of the incident, the ALJ thoroughly questioned Plaintiff about it. He asked her when it occurred, what prompted the incident, where she was taken, and how long she was held. Plaintiff informed the ALJ that she was held at The Centers for twelve hours and then released. Twice, the ALJ asked Plaintiff whether she sought or received follow up treatment from The Centers after the Baker Act incident and each time the Plaintiff informed the ALJ that she never returned for follow up treatment. In response to his

---

[35] With regard to Plaintiff's heart problems, the ALJ probed further and asked Plaintiff whether she understood her heart condition as it was described by her physicians.

question, "Was there a suicide attempt . . . on your part?" Plaintiff responded, "No, not at all. . . . We just had a big argument . . ." (R. 339-40.)

Thus, the evidence elicited by the ALJ was more than sufficient to support the ALJ's conclusion that the Baker Act incident was an isolated event unrelated to Plaintiff's alleged mental health problems. There was simply no need to obtain copies of the records from the Baker Act incident to reconfirm the information obtained from the Plaintiff during the hearing.

Further, in addition to the ALJ's exhaustive questioning of Plaintiff, the Plaintiff has failed to show how the failure to obtain and review the records associated with the Baker Act incident prejudiced the Plaintiff in any way. There is no suggestion by Plaintiff that the "missing" records would have shed any additional light on Plaintiff's mental health condition. Plaintiff testified that the event was precipitated by an argument with her mother – not any mental health problem. Indeed, Plaintiff specifically denied being depressed.

Notably, despite having an opportunity to provide the records to the Commissioner the Plaintiff never did so. After the hearing before the ALJ, although Plaintiff subsequently obtained the assistance of counsel and appealed the ALJ's unfavorable decision to the Appeals Council, she never supplemented the record with any evidence regarding the Baker Act incident.  Despite the fact that Plaintiff on appeal to the Appeals Council took issue with the ALJ's assessment of her mental impairment - and supplemented the administrative record with updated medical records from Marion County Health Department through July 2007 - none of these records provided to the

Appeals Council included *any* records associated with (or referring to) the Baker Act incident of October 2006.

Lastly, in addition to Plaintiff's testimony that she did not seek follow up treatment following the Baker Act incident, the supplemental medical records from 2007 reflect that Plaintiff has not received any mental health care treatment since her hearing before the ALJ. Accordingly, Plaintiff has failed to show in any way that she was prejudiced by the absence of the Baker Act records from the administrative record before the ALJ.[36]

Separate from her argument that the ALJ failed to fulfill his duty of developing the record by not obtaining the Baker Act records, Plaintiff also suggests that the ALJ should have obtained a further consultative examination. Although the regulations authorize an ALJ to order a consultative examination when warranted, an ALJ need not order one, as here, where the evidence of record is sufficiently developed for the ALJ to make an informed decision.[37] As discussed more thoroughly below, the evidence of record was more than sufficient for the ALJ to evaluate properly Plaintiff's mental impairments and functional ability. As such, there was no need for the ALJ to obtain an additional consultative examination regarding Plaintiff's mental health.

---

[36] *See* Smith v. Schweiker, 677 F. 2d 826, 830 (11th Cir. 1982).

[37] 20 C.F.R. § 404.1517; Good v. Astrue, 240 Fed. Appx. 399, 404 (11th Cir. 2007) (citing Wilson v. Apfel, 179 F.3d 1276, 1278 (11th 1999)).

## 2. The ALJ Properly Assessed Plaintiff's Mental Impairment.

 According to Plaintiff, the ALJ's failure to obtain the medical records pertaining to the October 2006 Baker Act incident resulted in the ALJ's determination at step two of the sequential analysis that Plaintiff did not have a "severe" mental impairment. The record does not support Plaintiff's argument. To the contrary the record fully supports the ALJ's conclusion that Plaintiff did not have a severe mental impairment.

As an initial matter, Plaintiff did not list any mental health impairments in her initial application for benefits and she specifically denied having mental health problems during conversations with case managers from the Social Security Administration in February, June, and September 2005. (R. 80, 82, 83.) Specifically, after speaking with Plaintiff on the telephone, the case workers noted Plaintiff was "cooperative, coherent . . . in good touch with reality" and that Plaintiff "indicated she is not disabled due to mental problems." (R. 80, 82, 83.)

Further, during her hearing before the ALJ, Plaintiff expressly denied having depression. In correspondence with the Social Security Administration dated May 2005, Plaintiff mentioned that she would sometimes have "panic attacks" when she was in crowded public areas and that she did not like to go places alone, but she attributed this to her fear of falling or fainting as a result of her physical impairments. (R. 108, 110-11.) A review of all of the paperwork Plaintiff filled out at the request of the Social Security Administration reveals that all of her complaints and alleged limitations were related to her physical impairments. (R. 58, 76-78, 85-133.)

The only complaint mentioned by Plaintiff of mental issues at the hearing was that she had anxiety (R. 337, 341, 343, 347) and as a result does not like to go outside

unaccompanied because of her panic attacks. (R. 337.) Thus, the only mental health problem Plaintiff presented was anxiety.

The ALJ thoroughly addressed the issue of Plaintiff's alleged anxiety and properly concluded that Plaintiff's anxiety was not disabling. While Plaintiff was diagnosed with "anxiety" that does not necessarily compel the conclusion that the condition is disabling[38] because a medical condition is only relevant to the ALJ's disability determination to the extent that it limits Plaintiff's ability to work.[39]

During the hearing, the ALJ asked Plaintiff whether "there [is] any activity any of [her] physician[s] have said [she] should avoid doing" and Plaintiff replied, "no." (R. 350.) This testimony is consistent with the medical evidence of record. Other than noting that Plaintiff had anxiety and prescribing anti-anxiety medications, Plaintiff's primary care physician did not note any significant problems related to her condition nor did he identify any limitations regarding Plaintiff's ability to work. (R. 137, 138, 139, 140, 144, 149.) During his examination of Plaintiff in February 2005, Dr. Demmi noted that Plaintiff did not have any mental health complaints and he observed that her mood and affect were normal. (R. 238-43.) Further, and most notably, during Plaintiff's consultative examination with Dr. Bojarski in June 2005, Plaintiff did not demonstrate any evidence of a thought disorder, nor any deficits in her memory, concentration or communication. Plaintiff advised Dr. Bojarski that her usual mood was "happy" and although she had current suicidal ideations, she had no plan or intent. (R. 266-69.) Although Dr. Bojarski

---

[38] 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also* <u>Gross v. Heckler</u>, 785 F.2d 1163, 1166 (4th Cir. 1986) ("[t]here must be a showing of related functional loss" for a psychological disorder to be considered disabling).

[39] <u>Moore v. Barnhart</u>, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005).

diagnosed Plaintiff with panic disorder with agoraphobia, she noted that Plaintiff was capable of performing her activities of daily living independently, Plaintiff reportedly went grocery shopping on a regular basis, and Plaintiff "engaged in some leisure activities." In sum, none of the physicians who examined the Plaintiff ever mentioned or concluded that Plaintiff's anxiety interfered with her ability to do work-related activities.

The opinions of the two state agency physicians, who reviewed the evidence of record, also is consistent with the conclusion by the ALJ. Both state agency physicians acknowledged Plaintiff's reported suicidal ideations during her consultative examination with Dr. Bojarski but further noted Plaintiff's lack of mental health care treatment, reported activities of daily living, as well as Plaintiff's own statement that she did not have a disabling mental problem. Both state agency physicians also noted that all of Plaintiff's reported limitations seemed to be related to her physical complaints – and were not related to her mental health. The ALJ's conclusion that the opinions of the state agency physicians are consistent with the evidence as a whole is fully supported by the record.

The evidence of record is unrefuted that other than attending one mental health counseling session following her daughter's death in 1992, Plaintiff never received or sought treatment for a mental impairment nor did any of her treating physicians refer her for psychiatric care. The lack of mental health treatment, as well as the limited notations of mental health issues in Plaintiff's medical records, support the ALJ's conclusion that Plaintiff's mental health conditions were not disabling.[40]

---

[40] *See* 20 C.F.R. § 404.1529(c)(3)(v); <u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1211 (11th Cir. 2005).

With regard to Plaintiff's assertion that she does not *like* to leave her home, based upon the evidence of record, it is apparent that she is capable of doing so. In her correspondence with the Social Security Administration, Plaintiff reported that she grocery shops approximately one time a week, and she goes out to eat with family and/or friends once a week. (R. 85, 104, 107, 108.) She also reported that although crowds make her uncomfortable, she has no problems getting along with others, and does not experience any problems with her memory, concentration, comprehension or ability to follow instructions. (R. 109.) As noted by the ALJ, these reported activities of daily living are inconsistent with a disabling mental health condition. (R. 20-21, 23-24.)

Accordingly, for these reasons, the ALJ's conclusion that Plaintiff's anxiety was not disabling is consistent with the entirety of the evidence of record and the evidence of record was more than sufficient to permit the ALJ to conclude that Plaintiff did not have a disabling severe mental impairment.

## V.  CONCLUSION

In view of the foregoing, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter final judgment in favor of the Commissioner consistent with this Order and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on November 25, 2009.


Copies to:

    All Counsel

GARY R. JONES
United States Magistrate Judge